**BURR OAKS CORPORATION,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**A. Aaron ELKIND and Rosella Elkind,**
Petitioners,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**Harold A. WATKINS and Fannie G.
Watkins, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**Maurice RITZ and Esther Leah Ritz,**
Petitioners,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

Nos. 15344–15347.

United States Court of Appeals
Seventh Circuit.

June 28, 1966.

Rehearing Denied Aug. 16, 1966.

Rehearing Denied Aug. 16, 1966,
En Banc.

Gerald J. Kahn, Herbert Morse, Milwaukee, Wis., for petitioners; James Ward Rector, Jr., Godfrey & Kahn, Milwaukee, Wis., of counsel.

Richard M. Roberts, Asst. Atty. Gen., Solomon Leo Warhaftig, Lee A. Jackson, Gilbert E. Andrews, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before KNOCH, CASTLE and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

The petitioners, Burr Oaks Corporation, A. Aaron Elkind and Rosella Elkind, Harold A. Watkins and Fannie G. Watkins, Maurice Ritz and Esther Leah Ritz, instituted these proceedings in the Tax Court to contest deficiencies in income taxes determined against them. Mrs. Elkind, Mrs. Watkins and Mrs. Ritz are in these cases only because joint income tax returns were filed. The cases were consolidated. The opinion of the Tax Court is reported at 43 T.C. 635, No. 51. The Tax Court held that the transfer of certain land by the petitioners A. Aaron Elkind, Harold A. Watkins and Maurice Ritz (hereinafter called "the individual appellants") to the corporate appellant represented a contribution to capital and not a sale. Accordingly, the Tax Court determined a deficiency against the corporate appellant for fiscal years ended September 30, 1958, 1959 and 1960. The Tax Court found deficiencies for one of the individual appellants, but also found an overpayment by all three of the individual appellants for 1959. The individual appellants have taken this appeal because of their concern as to adverse effect on future taxable years.

The three individual appellants acquired a tract of undeveloped land in 1957 for $100,000, which the appellants state to be less than the then market value.

After discarding plans to develop a regional shopping center or an industrial park, the individual appellants decided to subdivide the land, improve it and sell lots. The Burr Oaks Corporation was formed. The individual appellants transferred the land to it, and, in return, each received a two-year 6% promissory note in the principal amount of $110,000. The sum of $30,000 still due on the original purchase was entered on the corporation's books as "Mortgage Payable." Another account "Land Contract Payable" in the amount of $330,000 represented the three notes.

At the trial in the Tax Court, the appellants' expert witness testified that the property transferred to the corporation was worth at least $360,000. The Tax Court, however, found more convincing the testimony of the Commissioner's expert witness who stated that the land had a fair market value of only $125,000. On the basis of all the evidence adduced, the Tax Court found a fair market value of not more than $165,000 at the time of the transfer.

The wives and brothers of the three appellants transferred a total of $4,500 in cash to the corporation and received common stock as follows:

| Shareholder | No. of Shares |
|---|---|
| Rosella Elkind (Mrs. A. Aaron Elkind) | 150 |
| Fannie G. Watkins (Mrs. Harold A. Watkins) | 150 |
| Philip M. Ritz (Maurice Ritz's brother) | 75 |
| Erwin M. Ritz (Maurice Ritz's brother) | 75 |

They are the only stockholders of record. The officers and directors were:

Harold A. Watkins    President
Philip M. Ritz    Vice-President
Rosella Elkind    Secretary-Treasurer

### Directors

Harold A. Watkins    Fannie G. Watkins
Maurice Ritz    Philip M. Ritz
A. Aaron Elkind    Rosella Elkind

However, all control of the corporation was relinquished to the three individual appellants, who dominated its affairs, despite engagement of a manager and an accounting firm.

Without the knowledge of the shareholders or formal authorization by the directors, the corporation at times transferred lots and parcels to the three individual appellants at no cost or at less than the amount the land would realize from sales to third parties. The Tax Court particularly noted some commercial property 70 by 120 feet transferred by a deed which purported to correct an error in the initial conveyance to the corporation.

The Tax Court decided that the three promissory notes did not represent a true indebtedness. In 1959, these three notes, in the amount of $110,000 each, were surrendered by payment of $23,000 in cash on each note, and a new one-year promissory note dated November 1, 1959, in the amount of $87,000 at 6% was given in exchange for each of these three notes. Later the same year, the corporation paid $8000 to each of three noteholders and issued new promissory notes in the amount of $79,000. On December 29, 1959, the corporation purported to pay these notes, although at the close of business that day it had a bank balance of only $5,398.88. Immediately after such purported payment, the three individual appellant-noteholders each lent the corporation $79,000 in return for three new one-year promissory notes dated December 31, 1959, in the amount of $79,000 each. The Tax Court construes this transaction as a mere exten-

sion of the maturity date. Cf. Arthur L. Kniffen, 1962, 39 TC 553, 565–566. Additional payments were made to each of the three individual appellants as follows:

| 8/31/60 | $ 8,000 |
| 1/31/61 | 15,000 |
| 12/31/61 | 10,000 |

leaving a balance of $46,000 due each at the time of the trial. None of the earnings of the corporation were distributed to any of the shareholders of record.

Although the appellants all treated the transfer of the land in November, 1957, as a sale, the three individual appellants reported no gain until 1959 when the corporation "paid" the promissory notes issued at the transfer. In their returns for 1959, the three reported long term capital gains of $85,729.06. The Commissioner determined that this was ordinary income. The Commissioner increased the corporation's taxable income for 1958 through 1960 on the ground that the corporation claimed too high a basis or cost for the land it sold during that period.

The Tax Court considered the "notes" to be preferred stock because the three holders occupied a preferred position compared to the common stockholders, the 6% interest constituting a prior charge on the earnings of the corporation.

The three individual appellants contend that they transferred the Burr Oaks property, a capital asset held in excess of six months, to the corporation in return for promissory notes, valid indebtednesses incurred by the corporation, resulting in gain properly reportable in 1959 when the notes were paid in full. The Tax Court noted that the three individual appellants were all cash basis taxpayers who should have reported as income the fair market value of the notes received in exchange for the property sold. Pinellas Ice & Cold Storage Co. v. Commissioner of Internal Revenue, 1933, 287 U.S. 462, 468, 53 S.Ct. 257, 77 L.Ed. 428.

The corporation asserts that it bought the Burr Oaks property at a cost of $360,000 and that that should be its correct basis.

■ The Tax Court disregarded the form of the transaction and determined the substance of it to be not a sale but an equity contribution. Substance, rather than form, is the controlling factor in determining proper tax treatment. Sherwood Memorial Gardens, Inc., 42 T. C. 211, 1964, on appeal Sherwood Memorial Gardens, Inc. v. Commissioner of Internal Revenue, 7 Cir., 1965, 350 F.2d 225.

The Tax Court found the transfer lacking the essential characteristics of a sale, but, on the contrary, possessed of the elements normally found in equity contribution. See Emanuel N. Kolkey, 1956, 27 T.C. 37, affirmed, Kolkey v. Commissioner of Internal Revenue, 7 Cir., 1958, 254 F.2d 51. In that case, certain criteria were established:

> Was the capital and credit structure of the new corporation realistic? What was the business purpose, if any, of organizing the new corporation? Were the noteholders the actual promoters and entrepreneurs of the new adventure? Did the noteholders bear the principal risks of loss attendant upon the adventure? Were payments of "principal and interest" on the notes subordinated to dividends and to the claims of creditors? Did the noteholders have substantial control over the business operations; and, if so, was such control reserved to them, as an integral part of the plan under which the notes were issued? Was the "price" of the properties, for which the notes were issued disproportionate to the fair market value of such properties? Did the noteholders, when default of the notes occurred, attempt to enforce the obligations?

In this case, the corporation was organized with a paid-in capital of only $4500, but shortly thereafter reflected liability of $360,000 on its books. Although it was anticipated that the City of Madison, Wisconsin, would pay the major costs of improvement of the tract to be subdivided, the corporation would have to incur development costs estimated at $100,000 or more. Within two months, the corporation borrowed $15,000 from individual appellant Aaron Elkind and on February 28, 1958, borrowed another $10,000 from him. Although the taxpayers assert that a number of lots were ready for sale and that heavy capitalization was therefore unnecessary, the sales were not so quickly made as to eliminate the need to borrow. The land was the corporation's only asset.

■ When the payment to the transferors is dependent on the success of an untried undercapitalized business with uncertain prospects, a strong inference arises that the transfer is an equity contribution.

■ The three individual appellants, though not shareholders, controlled the corporation's affairs. Harold Watkins was president. Aaron Elkind, his wife, Maurice Ritz, his brother Philip, Harold Watkins and his wife were directors. The manager had been employed by Aaron Elkind in varying capacities for about 15 years. His activity was supervised by Maurice Ritz's accounting firm.

After hearing the testimony of the shareholders, Maurice Ritz's brothers, Mrs. Elkind and Mrs. Watkins, the Tax Court was convinced that they knew and understood little of the corporation's business and were subject to the control of the three individual appellants. Two of the latter agreed that the corporation was formed to allow them to receive a part of the development profits. The large "sales price" extended the time during which the three individual appellants participated as "creditors" and the amounts they could withdraw as principal if the corporation were successful.

Section 351(a) of the Act provides:

**Transfer to corporation controlled by transferor**

**General rule.**—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock

28

or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

Section 368(c) defines "control" as meaning:

* * * ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation.

The three individual appellants challenge the finding that they controlled the corporation as their "notes" gave them no voting rights. Actually, the three individual appellants and their wives and brothers all transferred some property (land or money) to the corporation. All received equity interests of some kind, although not at exactly the same time, in the same transaction. Camp Wolters Enterprises v. Commissioner of Internal Revenue, 5 Cir., 1956, 230 F.2d 555, 559, affirming 22 T.C. 737, 1954, cert. den. 352 U.S. 826, 77 S.Ct. 39, 1 L.Ed.2d 49. The Tax Court also observes that the Income Tax Regulations, § 1.351–1(a)(1) provide that the phrase "immediately after the exchange" does not necessarily require simultaneous exchanges by two or more persons, but also includes a situation where the rights of the parties have been previously defined and the execution of the agreement proceeds expeditiously consistent with orderly procedure.

The Tax Court thus fixed the corporation's basis for its property at $100,-000, a carry-over basis from the transferors, pursuant to § 362(a) (1).

■ The Tax Court found the payments to the three individual appellants were governed by § 302(d) and that to the extent of the corporation's earnings and profits, these should be treated as dividends.

After close scrutiny of the entire record, we conclude that the decisions of the Tax Court are correct and must be affirmed.

Affirmed.