**UNITED STATES of America,**
**Appellant,**

v.

**Charles C. HERTWIG, Trustee of Reorganization of Precision Recapping Equipment Company, Appellee.**

**No. 23887.**

United States Court of Appeals
Fifth Circuit.

July 25, 1968.

Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks, Acting Chief, Harry Baum, J. Edward Shillingbury, Albert J. Beveridge, III, Attys., Dept. of Justice, Washington, D. C., Floyd M. Buford, U. S. Atty., Macon, Ga., for appellant.

Louis Regenstein, Atlanta, Ga., Wallace Miller, Jr., Charles M. Cork, Charles M. Cork, Jr., Macon, Ga., for appellee.

Before JOHN R. BROWN, Chief Judge, SIMPSON, Circuit Judge, and SUTTLE, District Judge.

SIMPSON, Circuit Judge:

This appeal concerns the tax consequences of a transfer of property to a controlled corporation in exchange for notes. The sole question is whether the transfer falls within Section 112(b) (5), Internal Revenue Code of 1939, 26 U.S.C. 1952 ed., § 112(b) (5),[1] so as to require the taxpayer-corporation, under Section 113(a) (8) (A), Internal Revenue Code of 1939, 26 U.S.C., 1952 ed., § 113(a) (8) (A),[2] to carry over the stockholder-transferors' basis in the property for purposes of amortization, or whether the exchange is outside § 112(b) (5) thereby allowing the taxpayer to use as its basis the cost of the property, i. e. the face amount of the notes. Holding for the taxpayer, the district court sustained a decision of the Referee in Bankruptcy that the exchange was not within § 112 (b) (5). The Referee reached his decision by holding that the notes were not "stock or securities" within the meaning of that section. We reverse.

Prior to October 1953, C. O. Dennis and Zeb Mattox jointly owned certain patents and applications for patents (herein patents) relating to the recapping of used pneumatic tires. On October 1, 1953, Precision Recapping Equipment Company, the taxpayer, was organized under the laws of Georgia. Its initial capitalization was in the amount of $10,000.00. Dennis and Mattox each subscribed to 40% of its authorized shares of common stock. Several other transactions took place on the same day. Dennis and Mattox each assigned to Precision his half-interest in the patents. In return Precision executed two promissory notes, each in the amount of $1,500,000.00 and delivered one to Dennis and one to Mattox; the notes were payable in 150 monthly installments of $10,000.00 each, with interest of 2½ percent. Precision then licensed two companies controlled by Dennis and Mattox (Den-Nap Electric Mold Company and Retreading Equipment Company) to use the inventions covered by the patents for an agreed royalty. Finally, these two companies constituted Precision their exclusive sales agent in the United States with respect to their products which utilized the patents, Precision to be paid on a commission basis.

It was stipulated before the Referee in Bankruptcy that there was a bona fide transfer of the patents to Precision, that the price of $3,000,000.00 was reasonable and that the parties had a reasonable expectation that the notes given for the purchase price would be paid.

On November 1, 1954, the taxpayer discontinued the payment of interest on the notes. Dennis and Mattox have waived none of their rights to enforce the terms of the notes and they have not subordinated the notes to the claims of other creditors. During the period of October, 1953, through December, 1960, the taxpayer paid Dennis $517,424.56 and Mattox $333,773.80 on their respective notes. The taxpayer did not meet the scheduled payments due to the failure of Den-Nap and Retreading to pay

1. Substantially re-enacted as Section 351, Internal Revenue Code of 1954.

2. Substantially re-enacted as Section 362, Internal Revenue Code of 1954.

promptly the royalties and commissions owed to it.

In February 1961, the taxpayer filed a petition for arrangement under Chapter X of the Bankruptcy Act.

In February 1965, the United States filed a proof of claim before the Referee asserting deficiencies in income tax totaling $16,868.53 for the fiscal years ending September 30, 1963, and September 30, 1964. The deficiencies were based on the disallowance of deductions claimed in those years which related to the amortization of the patents received in October 1953.

Section 112(b) (5) provides:

"No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * *"

With the exception of the "proportion" requirement, which has been omitted, this section remains basically unchanged under Section 351(a), Internal Revenue Code of 1954.

Under the provisions of § 113(a) (8) (A),[3] where property is acquired by a corporation in an exchange governed by § 112(b) (5), the basis of the property shall be the same as it would be in the hands of the transferor. The government maintains that the basis of the patents in the hands of the transferors is zero.

Dennis and Mattox together owned 80 percent of the stock of Precision. Each transferred a half interest in the patents for half the notes issued in exchange for the patents. Therefore, the control and proportionate interest requirements of § 112(b) (5) admittedly were met. Consequently, the ultimate question is whether the two $1,500,000.00 notes given by Precision to Dennis and Mattox were "securities" for purposes of § 112(b) (5). The answer, of course, is determinative of the basis to be given the patents in the hands of Precision and its trustee.

We are urged by the trustee to affirm the district court's decision primarily because the parties in fact intended to make a sale, further that they intended to alter their status as proprietors to that of creditors and that there was therefore a lack of the continuing interest necessary for a determination that the notes were securities within § 112(b) (5).[4]

3. "SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Basis (Unadjusted) of Property.* The basis of property shall be the cost of such property; except that—

(8) *Property acquired by issuance of stock or as paid-in surplus.* If the property was acquired after December 31, 1920, by a corporation—

(A) by the issuance of its stock or securities in connection with a transaction described in section 112(b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

* * * * *

then the basis shall be the same as it would be in the hands of the transferor,

increased in the amount of gain [or decreased in the amount of loss] recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

With the exception of the bracketed portion above, which has been omitted, this section remains basically unchanged under Section 362(a) (1), Internal Revenue Code of 1954.

4. The taxpayer strongly relies on Sarkes Tarzian, Inc. v. United States, 7 Cir. 1957, 240 F.2d 467. The Seventh Circuit having reversed a summary judgment for the taxpayer, the case was decided on remand at 159 F.Supp. 253 (D.C.Ind. 1958). This case is factually distinguishable from the instant case. Moreover, to

■ It is well settled that the intent of the parties does not control the tax consequences of their actions. C. I. R. v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); United States of America v. W. B. and Edna B. Williams, 5 Cir. 1968, 395 F.2d 508 (May 24, 1968). This is no less true with respect to § 112(b) (5). In this, as in most cases, tax treatment depends on what was done, not why it was done. United States v. General Geophysical Company, 5 Cir. 1961, 296 F.2d 86. The question is simply whether the parties have, or have not, set up a transaction which tax law regards as "stock or securities". Campbell v. Carter Foundation Production Co., 5 Cir. 1963, 322 F.2d 827.

■ In answering this question, we follow the approach used in Camp Wolters Enterprises v. Commissioner, 5 Cir. 1956, 230 F.2d 555. In *Camp Wolters,* capital assets were purchased from stockholders by the corporate taxpayer four days after incorporation, at a cost greater than the stockholders' basis. In exchange, the stockholders received notes, payable within five to nine years, for the balance of the purchase price after a cash down payment. Immediately after their issuance, and pursuant to a pre-existing plan, the notes were subrogated to a large bank loan, and no payments could have been made on the notes until the bank loan was entirely discharged. Although the facts in *Camp Wolters* are distinguishable, the issue is the same. In holding that the notes were "securities" within the meaning of § 112(b) (5), this Court, in *Camp Wolters,* first noted that the notes did not evidence as isolated transaction of purchase and sale, having its inception after the forming and launching of the corporation, but were an integral part of the scheme of its forming and financing. After further noting that the term "securities" *does not include evidence of indebtedness for short term loans or representing tem-*

porary advances for current corporate needs, we then endorsed the following statement of the tax court:

"The test as to whether notes are securities is not a mechanical determination of the time period of the note. Though time is an important factor; the controlling consideration is an overall evaluation of the nature of the debt, degree of participation and continuing interest in the business, the extent of proprietary interest compared with the similarity of the note to a cash payment, the purpose of the advances, etc." 230 F.2d 555, at 560.

Viewing the facts of this case with the reasoning of *Camp Wolters* in mind, it is clear that the notes received by Dennis and Mattox were "securities" within the meaning of § 112(b) (5).

The exchange did not represent an isolated sale to Precision but was part and parcel of its formation. On the day it was formed, Dennis and Mattox each transferred cash to the corporation in return for stock, and the patents in return for the unsecured 12½ year notes. As in *Camp Wolters,* the notes and the stock were equally evidence of participation. The patents were the primary asset of the new corporation. Their determined value of $3,000,000.00, and the notes of a like amount, contrasted with Precision's $10,000.00 capitalization preclude any finding but that Dennis and Mattox, as holders of the notes, had a continuing proprietary interest in the success of the venture. That Dennis and Mattox expected the notes would be paid does not alter this conclusion.

In holding that § 112(b) (5) is applicable to the exchange here at issue, we do not attempt to determine the basis of the patents in the hands of the transferors, but hold only that pursuant to § 113(a) (8) (A), such basis must remain the same in the hands of Precision.

Reversed.

the extent that the district court's emphasis on the parties' intention reaches a result urged by Precision, it is not in

line with the reasoning of the Fifth Circuit cases discussed infra.