**UNITED STATES of America, Appellant,**

v.

**John A. MILLS, Jr. and Evelyn H. Mills, Appellees.**

**No. 25439.**

United States Court of Appeals
Fifth Circuit.

Aug. 2, 1968.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., Donald H. Fraser, U. S. Atty., Savannah, Ga., W. Reeves Lewis, Asst. U. S. Atty., Richard C. Pugh, Acting Asst. Atty. Gen., for appellant.

Thomas H. Adams, Julian Friedman, Adams, Adams & Brennan, Savannah, Ga., for appellees.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

In this taxpayer's[1] suit for refund of income taxes paid for the year 1959, the verdict of the jury was in his favor. The District Judge denied motions by the United States for judgment notwithstanding the verdict and, alternatively, for a new trial, and the Government has appealed.

Taxpayer Mills, a retired banker, on December 16, 1958, formed a corporation under the law of Georgia known as John Mills and Sons, Inc., with an authorized capital of 2,500 shares of common stock of a par value of $100 per share. The purpose of the corporation was to consolidate all of the business and investment assets of Mr. Mills and to simplify the transmission of his assets to his heirs in the event of his death. Taxpayer sought the advice of his accountant concerning the formation of the corporation and its tax consequences and was informed there would be no income tax liability in the exchange of his assets or stock of the corporation. Accordingly, on January 1, 1959, the following transfers were made between the taxpayer and the corporation:

| *Transferred to the corporation by taxpayer:* | | *Transferred to taxpayer by the corporation:* | |
|---|---|---|---|
| Various assets consisting of cash, | | Stock of the corporation | $249,800.00 |
| accounts receivable, notes receivable, stocks, cattle, | | Promissory note | 197,879.55 |
| real estate | $955,351.89 | | |
| (The corporation assumed payments due on certain notes in the sum of: | 507,672.34) | | |
| Net | $447,679.55 | | $447,679.55 |

---

1. Referred to in the singular though the parties are John A. Mills, Jr. and Evelyn H. Mills, husband and wife, who filed a joint income tax return.

Taxpayer received for the transfer 2,498 shares of the corporation's authorized stock of a par value of $249,800 and an unsecured promissory note for $197,879.-55 due one year thereafter, bearing interest at 5 per cent per annum—a total of $447,679.55, the net value of the assets transferred by him to the corporation.

The fair market value of the transferred assets at the date of transfer was $1,163,534.97 according to the stipulation entered into between the parties and received in evidence at the trial.[2]

Section 351 of the Internal Revenue Code of 1954 (26 U.S.C. § 351) is the pertinent statutory provision which governs taxability of transfers to a corporation controlled by transferor. It reads in pertinent part as follows:

SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) *General Rule.*—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

(b) *Receipt of Property.*—If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then—

(1) gain (if any) to such recipient shall be recognized, but not in excess of—

(A) the amount of money received, plus

(B) the fair market value of such other property received; and

(2) no loss to such recipient shall be recognized.

Applying this section, the Commissioner determined a deficiency in income tax. It was conceded that since taxpayer owned all but two of the corporation's authorized shares, he was in control of the corporation immediately after the

---

2. The pertinent paragraphs of said stipulation read as follows:
"7. The cost and fair market value as of January 1, 1959 of the properties and liabilities offered to the Corporation, per Exhibit D, were as follows:

| Description | Cost to Mr. Mills | Fair Market Value at Date of Transfer |
|---|---|---|
| Cash | $150,891.60 | $150,891.60 |
| Accounts Receivable | 10,600.07 | 10,600.07 |
| Notes Receivable | 598,668.69 | 598,668.69 |
| Corporate stocks | 10,075.00 | 10,075.00 |
| Cattle | 42,390.71 | 65,594.58 |
| Real Estate | 142,725.82 | 327,705.03 |
| | $955,351.89 | $1,163,534.97 |
| Notes payable (assumed) | (507,672.34) | (507,672.34) |
| | $447,679.55 | $655,862.63 |

With the exception of the $598,668.69 of the Notes Receivable described above, the parties agree that on or about January 1, 1959, the ownership of above described properties and liabilities was transferred by Mr. Mills to the Corporation.
"8. If the Notes Receivable in the amount of $598,668.69 were transferred to the corporation (which Plaintiffs deny), the fair market value of the 2,498 shares of common stock of John Mills & Sons, Inc. transferred to the Plaintiffs was $457,983.08 and the fair market value of the Note Payable by said corporation to the Plaintiff was $197,879.55. * * *"

exchange, as Section 351 requires. However, the Commissioner determined that the unsecured one-year promissory note in the amount of $197,879.55 was "other property" within the meaning of subsection (b) of Section 351 and that the exchange was therefore taxable to the extent of the fair market value of the note conceded to be the sum of $197,879.55. If, however, the Commissioner had determined, as taxpayer contends he should have, that the one-year note represented a "security" within the meaning of Section 351(a), the exchange would have been wholly tax free under the provisions of the section.

The question, therefore, whether the one-year promissory note was a "security" was submitted to the jury and it found for the taxpayer.

As authority for the meaning of the undefined term "security," both the Government and taxpayer rely on this Court's decisions in Camp Wolters Enterprises v. Commissioner of Int. Rev., 5 Cir., 1956, 230 F.2d 555; Aqualane Shores, Inc. v. C.I.R., 5 Cir., 1959, 269 F.2d 116; and Parkland Place Company v. United States, 5 Cir., 1966, 354 F.2d 916, and both parties quote the following identical excerpt from the *Camp Wolters* decision, which was restated in *Aqualane Shores* and applied in *Parkland Place Company:*

"The test as to whether notes are securities is not a mechanical determination of the time period of the note. Though time is an important factor, the controlling consideration is an overall evaluation of the nature of the debt, degree of participation and continuing interest in the business, the extent of proprietary interest compared with the similarity of the note to a cash payment, the purpose of the advances, etc. It is not necessary for the debt obligation to be the equivalent of stock since Sec. 112(b) (5) specifically includes both 'stock' and 'securities'. "

In applying this test in *Camp Wolters,* this Court found the following factors to be indicative that a note was a "security": The notes "were an integral part of the scheme of its [the corporation's] forming and financing" (230 F.2d at 559); the rights created by the note "constituted permanent contributions to petitioner's business, not merely temporary advances of rights to be used for current needs" and the "noteholders were assuming a substantial risk of petitioner's enterprise, and on the date of issuance were inextricably and indefinitely tied up with the success of the venture, in some respects similar to stockholders" (Id. at 560, quoting with approval from the Tax Court decision); the giving of the notes was "an integral part of the pot luck no pay no cure plan, formed before incorporation, of launching petitioner with cash and securities in note form" (Id. at 559); the notes and stock were "different forms of the assured participation in the pot luck of the enterprise" or "evidence of participation" (Id. at 560).

The Government contends that since the promissory note on its face is payable in one year and it is, therefore, a short-term note, such a note is generally not held to be a security nor should it reasonably be considered risk capital; that the *Camp Wolters* indicia of a security do not compare with those in the present case which should not have been submitted to the jury but a verdict should have been directed in its favor.

The taxpayer, Mr. Mills, testified that the transaction took the form of his receiving stock of the corporation and a promissory note because he wished to have the interest due on the note as a supplement to his current income; that his real intention was that the principal never be paid and that it was regarded as a long-term obligation. The note was renewed two additional times for one-year periods and after three years from its issuance when a revenue agent, pursuant to an audit, considered that interest on the note was a non-deductible dividend, taxpayer surrendered the note to the corporation for which he received approximately $205,310 of notes receiv-

able owned by the corporation. Taxpayer also testified that it had been his custom and the custom of the area to make one-year notes and renew them at the end of a year. He said that he had done this many times in his bank and other businesses. He also introduced two other witnesses who testified to the custom of one-year notes which were renewed each year at the discretion of the holder.

 All of these questions were for the jury and its verdict is amply supported by the evidence, for there was no gain to taxpayer on the transaction by which he transferred his business and investment assets to a virtually wholly owned corporation for the promissory note of $197,879.55 in what we consider to be a tax-free exchange in compliance with Section 351. The promissory note was found by the jury to be a security and we are not constrained to disturb the jury's findings, nor was the District Judge. The term "security" is not defined in Section 351 of the Internal Revenue Code of 1954, nor is it defined in the Treasury Income Tax Regulations. Such a determination must be made on a case-by-case basis, and each case must be decided on its particular facts.[3] It is clear to us from the evidence of the record that taxpayer intended the one-year note of $197,879.55 to remain more or less indefinitely as an obligation of the corporation on which he would draw interest on an annual basis to supplement his income. His credibility as a witness was tested by the jury, which believed his testimony. Evidence of custom obviously cannot vary the term of a note, nor was that done here, but the evidence of custom was merely corroborative of the direct testimony given by taxpayer that he never intended to collect the note and expected it to be a permanent obligation. We are not disposed to challenge the jury's verdict in these circumstances, made under a proper charge by the Court,

nor would we be warranted in doing so. There is substantial evidence to support the verdict and it is not the function of an appellate court to weigh conflicting evidence, judge the credibility of witnesses, and arrive at a conclusion opposite from the one reached by the jury where there is a reasonable basis in the record for the jury's verdict. Liberty Mutual Ins. Co. v. Falgoust, 5 Cir., 1967, 386 F.2d 248; Equitable Life Assurance Society of United States v. Fry, 5 Cir., 1967, 386 F.2d 239.

Affirmed.

---

**3.** See Rev.Rul. 63–28, 1963–1 Cum.Bull. 76 (1963) referring to "essentially factual determinations" in "resolution of the tax effect of transfers of this type"; also Rev.Proc. 64–31, 1964–2 Cum.Bull. 947 (1964).
See also United States v. Hertwig, Trustee, 5 Cir., 1968, 398 F.2d 452.