**STANLEY, INC., Plaintiff,**

v.

**Paul A. SCHUSTER, District Director, Internal Revenue Service, Defendant.**

**Civ. A. No. 8012.**

United States District Court
S. D. Ohio, E. D.
Jan. 22, 1969.

---

Robert H. Hoffman and Katheleen K. Haase, of Summer, Hoffman & Bowsher, Columbus, Ohio, for plaintiff.

Robert M. Draper, U. S. Atty., Columbus, Ohio, Mitchell Rogovin, Asst. Atty. Gen., for defendant; Arthur L. Stern, III, Washington, D. C., of counsel.

## MEMORANDUM OF DECISION

KINNEARY, District Judge.

Plaintiff, Stanley, Inc., has brought this action under Title 28, United States Code, Section 1340, seeking a refund of federal income taxes which were paid by it as a taxpayer on December 20, 1965.

The facts of this case, as stipulated and as presented at trial, concern the activities of Stanley, Inc. during the years 1954 through 1963. The Commissioner of Internal Revenue assessed a tax deficiency against the taxpayer in the amount of $126,052.28 plus interest of $15,478.53 for the year 1963. Subsequently, $2,139.44 of the interest was abated. This assessment related to two principal issues. The first issue concerned the amount and nature of income realized by the taxpayer during the year 1963 from the subdivision, development and sale of lots in a housing development called Greenfield Estates. This issue in turn presented two questions; i. e., the basis of the land in the hands of the taxpayer and whether the income was ordinary income or capital gain. The second issue was whether the taxpayer was entitled to an abandonment loss during the year 1963, arising from an alleged abandonment of architectural plans for an apartment house complex which never developed.

### I   Income From Greenfield Estates

#### A.   The Basis of the Land in Hands of Taxpayer

Plaintiff contends that the deeding of the real estate, later known as Greenfield Estates, by Turkey Run, Inc. to the taxpayer was a bona fide sale between the parties resulting in a stepped up basis for the land in the hands of the taxpayer. The defendant contends that the transfer was a Section 351 transfer resulting in a carryover basis in the hands of the taxpayer. Title 26, United States Code, Section 351, states as follows:

> No gain or loss shall be recognized if property is transferred to a corporation * * * by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in Section 368(c)) of the corporation.

The relevant portion of Title 26, United States Code, Section 368(c) states:

> * * * the term "control" means the ownership of stock possessing at least 80 per cent of the total combined voting power of all classes of stock entitled to vote and at least 80 per cent of the total number of shares of all other classes of stock of the corporation.

In order for this transfer to fall within the provisions of Section 351, the transferor must be found, (a) to have transferred the real estate to Stanley, Inc. solely in exchange for stock or securities of Stanley, Inc., and, (b) to be in control of Stanley, Inc. immediately after that exchange.

The parties do not dispute the form of the transaction by which Turkey Run, Inc. transferred the land to Stanley, Inc. There was a purchase and sales

agreement entered into by the parties calling for payment as follows:

| Amount | Due Date |
|---|---|
| $60,000.00 | November 10, 1963 |
| 60,000.00 | November 10, 1964 |
| 60,000.00 | November 10, 1965 |
| 67,000.00 | November 10, 1966 |

Turkey Run, Inc. executed a warranty deed to Stanley, Inc., and a promissory note in the amount of $247,000.00 was executed in return.[1] The promissory note was secured by a mortgage deed which stipulated that the land was to be released from the mortgage only at the rate of one (1) acre per $6,000.00 paid on the note. Stanley, Inc. had been organized in 1954, but no stock was issued until 1958, and at the time of this transaction; i. e., 1962, Stanley, Inc. had assets totaling $99.84.

Though the form of the subject transaction was that of a sale, it is clear that substance, not form, controls in determining the effect of the transaction for federal income tax purposes. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); In re Kolkey, 27 T.C. 37 (1956), aff'd *sub. nom.* Kolkey v. Commissioner of Internal Revenue, 254 F.2d 51 (7th Cir. 1958). In *Kolkey*, the Tax Court established certain criteria for determining whether a transaction results in a "sale" or an "equity contribution."

Was the capital and credit structure of the new corporation realistic? What was the business purpose, if any, of organizing the new corporation? Were the noteholders the actual promoters and entrepreneurs of the new adventure? Did the noteholders bear the principle risks of loss attendant upon the adventure? Were the payments of "principal and interest" on the notes subordinated to dividends and to the claims of creditors? Did the noteholders have substantial control over the business operations; and, if so, was such control reserved to

them, as an integral part of the plan under which the notes were issued? Was the "price" of the properties, for which the notes were issued, disproportionate to the fair market value of such properties? Did the noteholders, when default of the notes occurred, attempt to enforce the obligations? Burr Oaks Corporation v. C. I. R., 365 F.2d 24, 27 (7th Cir. 1966) quoting *Kolkey*, supra.

Plaintiff contends that the facts of this case when tested under the above criteria demonstrate that the transaction between Turkey Run, Inc. and Stanley, Inc. was a "sale" and not a transfer in exchange for stock or securities. Reduced to the simplest of terms, the question becomes one of whether the subject transaction created a debtor-creditor relationship or a stockholder relationship between the transferee and transferor.

As stated above, the transaction took the form of a sale. The purchase and sale agreement set forth a payment schedule, demanded a promissory note, with acceleration clause and warrant of attorney, and demanded a mortgage, which would include an assignment of rents and profits. These requirements were satisfied by the documents which were used to formalize the transaction.

The evidence, however, supports the government's contention that this transaction was not a bona fide sale creating a debtor-creditor relationship. In Burr Oaks Corp. v. Commissioner of Internal Revenue, 365 F.2d 24 (7th Cir. 1966), the Court of Appeals affirmed the holding of the Tax Court that the transaction therein involved was a Section 351 transfer. In that case, three individuals transferred land to the taxpayer corporation in return for two year six per cent promissory notes in the amount of $110,-000.00. The form of the transaction was that of a sale, and at various times purported payments were made on the notes. There were several factors which led to the holding that the transaction was, in substance, an equity transaction. First,

---

1. At the closing, $1,430.00 was paid in cash.

the corporation was organized with a paid-in capital of only $4,500.00, but shortly thereafter reflected a liability of $360,000.00—representing the value of the purported debt. Next, the land was the corporation's only asset. Third, the corporation had to borrow money to meet certain development costs. Lastly, the payment of the notes was dependent upon the success of the business. 365 F. 2d at 25–27.

This case presents a strikingly similar fact pattern. Stanley, Inc. was organized with a paid-in capital of $4,500.00, and at the time of the transfer had only $99.84. Immediately following the transfer in question, Stanley, Inc. showed a liability of $247,000.00—representing the value of the note given to Turkey Run, Inc. The land was the corporation's only visible asset and the payment of the alleged debt was subject to the success of the business. Stanley, Inc. had to borrow, as did Burr Oaks Corporation, to meet certain development costs. It thus appears that the entire risk of the venture was Turkey Run's. Though plaintiff contends that Turkey Run was protected by its mortgage, the evidence showed that by 1963 this protection has dissipated due to the release of individual parcels to buyers. By the end of 1963, when all but ten of the individual lots were sold, virtually all of the forty-one acres had been released from the mortgage, though $187,000.00 was still outstanding on the note. Further proof that Turkey Run, Inc. bore the entire risk is evidenced by the fact that Turkey Run, Inc. subordinated its interests to that of another creditor, Concrete Construction Company.

In Portland Oil Co. v. Commissioner of Internal Revenue, 109 F.2d 479 (1st Cir. 1940), it was said that a Section 351 transfer:

lacks a distinguishing characteristic of a sale, in that, instead of the transaction having the effect of terminating * * * the beneficial interests of the transferor in the transferred property, * * * the transferors continue to be beneficially interested in the transferred property. * * *

No clearer example of a continuing beneficial interest could be found than that demonstrated by the facts of this case.

Under the tests laid down in Burr Oaks Corp., *supra*; Kolkey, *supra*; Nassau Lens Co., Inc. v. Commissioner of Internal Revenue, 308 F.2d 39 (2d Cir. 1962); Camp Wolters Enterprises v. Commissioner of Internal Revenue, 230 F.2d 555 (5th Cir. 1956), and Gooding Amusement Co. v. Commissioner of Internal Revenue, 236 F.2d 159 (6th Cir. 1956), and upon consideration of the facts discussed above, the Court finds that the transfer of land from Turkey Run, Inc. to Stanley, Inc. on November 13, 1962, was in the nature of an equity contribution and will be so treated for federal income tax purposes.

■ The next determination must be whether after the exchange the transferor was in control of Stanley, Inc. within the purview of Section 368(c). It is defendant's contention that Turkey Run, Inc. and Dr. Robert E. S. Young should be considered together as transferors and that immediately after the exchange they, together, were in control of Stanley, Inc. Stated otherwise, defendant contends that Dr. Young's purchase of all the voting shares of Stanley, Inc. and Turkey Run, Inc.'s loan, which completed the equity investment in Stanley, Inc., should be considered as one integrated transaction. Both parties cite and rely on American Bantam Car Co. v. Commissioner, 11 T.C. 397, aff'd 177 F. 2d 513 (3d Cir. 1949), wherein the Tax Court listed the following factors as being worthy of consideration in determining whether a series of steps may or should be treated as a single transaction: the intent of the parties, the time lapse, the ultimate result and the mutual interdependence of the steps.

■ If two or more persons transfer property to a corporation at the same time, or pursuant to a common scheme, the transfers can be considered together for federal income tax purposes. Burr

Oaks Corp. v. Commissioner of Internal Revenue, *supra*; Camp Wolters Enterprises v. Commissioner of Internal Revenue, 230 F.2d 555 (5th Cir. 1956). In this case, it is clear that Dr. Young's transfer of cash to Stanley, Inc. in 1958 was a transfer of property within the meaning of Section 351. American Bantam Car Co. v. Commissioner, *supra*. Furthermore, the law is clear that the "stock or securities," of whatever form, received by the several transferors do not have to be identical to satisfy Section 351. Specifically, even though one transferor receives all of the voting stock and the other only equity, the requisite control will be determined to be held by both transferors together—resulting in a carryover basis in the property—as long as the transfers can be considered together. Burr Oaks Corp. v. Commissioner of Internal Revenue, *supra*. Therefore, in this case, if Dr. Young and Turkey Run, Inc. are both considered to be transferors they will be found to be in control of Stanley, Inc., for they owned more than eighty per cent of the voting stock of Stanley, Inc.

Turning to the factors as outlined in *American Bantam*, the Court finds that the defendant's contention is supported by the evidence.

*Intent of the Parties.* Plaintiff contends that there is no evidence that the parties intended a mere change in the form of ownership of the subject property; however, based on what is discussed above, the Court decides that what occurred was not a true sale but more closely resembled a mere change in the form of ownership.

*The Ultimate Result.* Plaintiff contends, and rightly so, that the "control test" is not met in every transaction where the transferred property is the source of the purchase money. Plaintiff also contends that the benefits from the utilization of the land did transfer from Turkey Run, Inc. to Stanley, Inc. in that all that Turkey Run, Inc. received was the fair market value of the land. While the fact that the transferred property is the source of the purchase money

is not controlling in every case, it has particular significance in light of the determination that this transaction was not a bona fide sale. Whether the parties to this transaction intended to shield the assets of Turkey Run, Inc. from the burdens and pitfalls of development or to allow Turkey Run, Inc. to claim capital gains treatment for the income from the purported sale, the ultimate result is that Turkey Run, Inc. did bear the risks of this development and did benefit, by being paid, from the utilization of the land. The prior financial condition of Stanley, Inc. dictates a finding that it was only through the utilization of the land that Turkey Run, Inc. would or could be paid.

### Time Lapse and Interdependence of the Steps.

Although the time lapse between the issuance of stock by Stanley, Inc. for cash received from Dr. Young and the issuance of an equity interest in the form of a promissory note to Turkey Run, Inc. was about four years, the defendant contends that these two transactions were so completely interdependent as to constitute a single transfer within the meaning of Sections 351 and 368. It is clear that to fall within these sections it is not necessary that the transfer be singular and that multiple transfers need not occur at the same time. Burr Oaks Corp. v. Commissioner of Internal Revenue, 365 F.2d 24, 28 (7th Cir. 1966), Camp Wolters Enterprises v. Commissioner of Internal Revenue, 230 F.2d 555, 559 (5th Cir. 1956).

In *Camp Wolters, supra,* the Court found that separate transfers of property to the corporation in return for notes were "an integral part of the scheme of its forming and financing." 230 F.2d at 559. Further, this Court determines that the fact that the transactions in *Camp Wolters* took place within a time span of a few days does not sufficiently distinguish it from this case so as to require a contrary result. Although Stanley, Inc. had been incorporated four years before this transfer of

land from Turkey Run, Inc., it had not been "fully formed and launched" in a business sense until the subject transaction occurred. *Id.*

The evidence is clear that prior to the subject transfer Stanley, Inc. was not financially capable of doing business and in effect the acquisition of land from Turkey Run, Inc. was the capitalization which gave life to it.

Since these transfers are, therefore, to be considered as one, and since each transferor received either stock or securities, the control test in Section 368 (c) has been met. The Court determines, therefore, that the transfer of land from Turkey Run, Inc. to Stanley, Inc. was a Section 351 transfer resulting in a carryover basis for the land in the hands of Stanley, Inc.

### B. Ordinary Income or Capital Gain

■ The facts relating to the subsequent subdivision, development and sale of the land transferred from Turkey Run, Inc. to Stanley, Inc. as presented by plaintiff during the trial are not disputed by the defendant. The dispute arises as to what issue is presented to the Court for determination.

Plaintiff contends that Stanley, Inc. is not and has not been engaged in the business of real estate development, and that the question presented is whether the activities of an independent contractor-developer can be attributed to the landowner for the purpose of finding that the landowner held the land primarily for sale to customers in the ordinary course of its trade or business. Defendant contends, on the contrary, that the question presented is whether Stanley, Inc. acquired the land and held the land for the sale to customers in the ordinary course of business so as to preclude capital gain treatment.

Section 1221 of the Internal Revenue Code of 1954 states:

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer * * *, but does not include:

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

Plaintiff contends, and the evidence supports the fact that, Stanley, Inc.'s activities relating to the actual subdivision, development and sale of Greenfield Estates were minimal. The cases cited and relied upon by plaintiff demonstrate, however, that this is not the sole factor in the determination of whether income from the sale of real estate qualifies for capital gain treatment.

In Voss v. United States, 329 F.2d 164 (7th Cir. 1964) and Smith v. Dunn, 224 F.2d 353 (5th Cir. 1955) the taxpayers had owned or held the real estate for periods of twenty-three and fifty-three years respectively. Gudgel v. Commissioner of Internal Revenue, 273 F.2d 206 (6th Cir. 1959) also indicates that other factors play a part, for in that case the taxpayer, although an active participant in the development and sale of the real estate was accorded capital gain treatment for the income upon the Court's consideration of, (1) the purpose for which the property was acquired, (2) the time period during which the land was held, and, (3) the circumstances leading to the sale.

This Court, therefore, does not interpret Section 1221 to mean that only by engaging in the business of real estate development may one be found to be holding realty for the sale to customers in the ordinary course of business.

The term "capital asset" is construed narrowly in accordance with the purpose of Congress to afford capital gains tax treatment only in situations typically involving the realization of appreciation in value accrued over a substantial period of time, and thus to ameliorate the hardship of taxation of the entire gain in one year. C.I.R. v.

Gillette Motor Transport, Inc., 364 U.S. 130, 80 S.Ct. 1497, 4 L.Ed.2d 1617, (1960).

Without passing on the question of whether the actions of DeNune Realty Company and Homewood, Inc. are attributable to Stanley, Inc., the Court finds that Stanley, Inc. held the land in question for sale to customers in the ordinary course of its business. Two factors, supported by the evidence, require this finding. First, Stanley, Inc., prior to the time it acquired this land, was engaged in no other business. Second, within one week of acquiring the land, it contracted with DeNune Realty Company and Homewood, Inc. for the subdivision, development and sale of the land. It is obvious to this Court that Stanley, Inc. acquired this land for the purpose of sale, held it for the purpose of sale, and did, in fact, sell it to customers in the ordinary course of its only business activity, and that such activity does not comport with the Congressional intent in providing the capital gains exception to the normal tax laws. Commissioner of Internal Revenue v. Gillette Motor Transport, Inc., *supra*.

## II Abandonment Loss

■ The second issue presented by this case is whether plaintiff is entitled to take a deduction, during the year 1963, for a loss occasioned by the abandonment of certain architectural plans.

The evidence disclosed that sometime prior to August 12, 1958, Turkey Run, Inc. planned to build a multiple dwelling apartment house complex on land owned by it. Pursuant to this plan, plaintiff, in consideration of having the exclusive right to manage the complex, agreed to obtain financing for the project. In its effort to obtain such financing, plaintiff entered into a contract with the architectural firm of Brown, Brubaker & Brandt for the rendering of preliminary and working drawings and for supervision of the actual construction of the project at an estimated cost of $67,000.00.

At the time this contract was entered into, namely August 12, 1958, the architects had already been paid $14,750.00 by Certified Mortgage Corporation. In time the remaining $52,750.00 due to the architects and $2,198.00 due to two engineering companies was paid by Certified Mortgage. At first, Dr. Robert Young gave his personal note or notes to Certified Mortgage to secure this debt. However, on January 11, 1961, Stanley, Inc. gave its note to Certified Credit Corporation who succeeded to the interests of Certified Mortgage. This note was co-signed by Milher, Inc., a corporation owned by Dr. Young. Milher, Inc. pledged five per cent thrift certificates of Certified Credit in the amount of $70,000.00 to secure its note, and eventually these were redeemed in satisfaction of the note. Thereupon, Stanley, Inc. issued its note in the amount of $70,000.00 to Milher, Inc.

In November, 1961, the City Council of Columbus changed the zoning regulations governing the property owned by Turkey Run, Inc. so that the proposed apartment house complex could not be built. Efforts, including the filing of a law suit against the city, were made to have the land rezoned to allow multiple dwelling construction. While the evidence is conflicting, the Court finds that during the last week of December, 1963, the decision was made to dismiss the suit against the city and to cease efforts to change the zoning.

Plaintiff contends that all efforts to change the zoning were abandoned in 1963, and that in that year it is entitled to a loss of $69,698.75 on its note to Milher, Inc. Defendant, on the other hand, claims that Stanley, Inc. suffered no loss because: (1) it had no "property," the termination of the usefulness of which would give rise to a loss; (2) the plans are depreciable property whereas abandonment relates only to non-depreciable property; (3) there was no abandonment of the plans; (4) that Stanley, Inc. has a right to recover from Turkey Run, Inc. if it ever pays off the

note; and, (5) if there were a loss, it occurred in 1961, not 1963.

Section 165 of the Internal Revenue Code of 1954, states:

(a) *General Rule*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

The applicable treasury regulation— T.R. 1.165–1(b) states:

*Nature of loss allowable.* To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transaction, fixed by identifiable events, and, * * * actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.

Looking at the matter with regard to substance rather than form, the Court finds from the evidence that the plaintiff owned a set of architect's plans valued at $67,000.00, subsequently these plans became valueless, plaintiff made efforts to mitigate the loss and late in 1963, plaintiff ceased these efforts. The evidence does not suggest, as defendant argues, that plaintiff never intended to pay the note issued to Milher, Inc. which forms the basis for this loss deduction. The evidence does support plaintiff's claim for an abandonment loss in 1963, and therefore, the deduction was erroneously disallowed.

Whereupon, upon consideration of evidence presented through the testimony of the witnesses, exhibits and depositions and the cases herein cited, it is the determination and judgment of the Court that:

1. The transfer of land from Turkey Run, Inc. to Stanley, Inc. was a Section 351 transfer resulting in a carryover basis for the land in the hands of Stanley, Inc.

2. The income to Stanley, Inc. from the sale of Greenfield Estates is ordinary income.

3. Stanley, Inc. suffered a deductible loss in 1963 from the abandonment of the architectural plans proposed for it by Brown, Brubaker and Brandt.

Settle an Order consistent herewith on or before twenty (20) days from the date hereof.