LAWTON S. MOCK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mock v. Commissioner
Docket Nos. 42920-85; 42922-85.
United States Tax Court
T.C. Memo 1987-382; 1987 Tax Ct. Memo LEXIS 380; 54 T.C.M. (CCH) 37; T.C.M. (RIA) 87382; August 4, 1987. Lawton S. Mock, pro se. Francis C. Mucciolo, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: In these consolidated cases, respondent determined deficiencies in income tax and additions to tax against petitioner for the years 1972 and 1973 in the following amounts: Additions to Tax
Year
Deficiency
Section 6653 (b)[1]
Section 6654
1972
$ 35,935.86
$ 17,967.93
$ 1147.19
1973
23,051.16
11,525.58
-
Petitioner, Lawton S. Mock, resided in Treasure Island, Florida, at the time he filed his petitions in these two cases. Petitioner did not file an income tax return for the taxable year 1972. He did file a timely joint return with his then wife, Muriel Mock, for the calendar year 1973. Respondent's statutory notice of *382 deficiency for the year 1972 was issued to petitioner on August 30, 1985, and the statutory notice for the calendar year 1973 was issued to petitioner and Muriel Mock on the same date. [2] Both said statutory notices recomputed petitioner's taxable income for the years in question under the net worth-expenditures method of computation, with resulting deficiencies and additions to tax as stated above. The petition which petitioner filed herein for the year 1972 did not place in issue respondent's determination of unreported income for that year, nor respondent's determination of additions to tax. Instead, the petition only raised the issue of petitioner's right to average his income under the provisions of sections 1301 through 1305. At the time of trial herein, however, petitioner attempted, over respondent's objection, to raise an additional issue with regard to the correctness of respondent's net worth computation, and specifically with regard to the correct amount of cash on hand which petitioner had at the beginning of the year 1972. Such issue involved a material fact, and raising it at the time of *383 trial was clearly prejudicial to respondent. The Rules of this Court clearly provide, in Rule 34(b)(4) that "Any issue not raised in the assignment of errors shall be deemed to be conceded." Furthermore, Rule 34(b)(5) clearly requires that a petitioner provide "Clear and concise lettered statements of the facts on which petitioner bases the assignments of error, except with respect to those assignments of error as to which the burden of proof is on the Commissioner." The issue of the accuracy of respondent's opening net worth statement is therefore not properly before the Court, and will not be considered. Camp Wolters Enterprise, Inc. v. Commissioner,22 T.C. 737 (1954), affd. 230 F.2d 555 (5th Cir. 1956), cert. denied 352 U.S. 826 (1956). [3]
*384 Quite aside from petitioner's failure to properly plead or amend his pleadings so as to raise this issue, there is another ground upon which we would refuse to consider the issue, and this includes also the question of petitioner's right to average his income, which was raised in the petition for 1972. At the conclusion of the trial herein, the parties were ordered to file simultaneous requested findings of fact and brief, with the original briefs due in 90 days, and reply briefs 60 days thereafter. Respondent timely filed his principal requested findings of fact and brief herein, but petitioner did not do so. Rule 151(a) provides in relevant part: (a) General: Briefs shall be filed after trial or submission of a case, except as otherwise directed by the presiding Judge. * * * The provisions of Rule 151 are not permissive but mandatory. Petitioner's failure to timely file any requested findings of fact or brief herein is unexplained and unexcused. [4] Petitioner had an obligation to assist the Court by organizing the material presented at trial, which was extensive, and giving *385 the Court his views of the controlling legal authorities. See Stringer v. Commissioner,84 T.C. 693, 704-708 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986); Calcutt v. Commissioner,84 T.C. 716, 721-722 (1985). Petitioner was clearly aware of his obligation to do this and his failure to comply with the Court's direction with regard to requested findings of fact and brief is deemed to be a concession by him of all the remaining issues presented in this case on which petitioner had the burden of proof. See Stringer v. Commissioner, supra;Calcutt v. Commissioner, supra;Stonegate of Blacksburg, Inc. v. Commissioner,T.C. Memo. 1974-213. *386 This leaves for our consideration solely the year 1973. At trial, petitioner conceded that respondent's determination of deficiency for this year was correct. This leaves us only to determine whether or not the admitted deficiency for this year was due to fraud within the meaning of section 6653(b). If not, the assessment of the deficiency and addition to tax for 1973 are barred by the applicable statute of limitations, section 6501(a), but if fraud is found, such deficiency and addition may be assessed at any time. Sec. 6501(c)(1). For the purposes of section 6653(b) and 6501(c)(1), the fraud envisioned is defined as an actual, intentional wrongdoing with the specific intent to evade a tax believed to be owed. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Wilson v. Commissioner,76 T.C. 623, 634 (1981); McGee v. Commissioner,61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975), *387 cert. denied 424 U.S. 967 (1976). The burden that respondent bears of proving applicability of the section 6501(c) (10 exception to the general three-year statute of limitations is the same burden as that which respondent bears in sustaining the addition to tax for fraud under section 6653(b). Ruidoso Racing Association, Inc. v. Commissioner,476 F. 2d 502, 505 (10th Cir. 1973); Asphalt Industries, Inc. v. Commissioner,384 F.2d 229, 232 (3d Cir. 1967), reversing 46 T.C. 622 (1966). In short, respondent must show that the taxpayer intended to evade taxes known or believed to be owing by conduct calculated to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Stoltzfus v. United States, supra;Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner, supra;Gajewski v. Commissioner,67 T.C. 181, 189 (1976), *388 affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Fraud is never presumed, but rather must be established by affirmative evidence. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Respondent may carry his burden on the basis of reasonable inferences to be drawn from the record, but he may not rely on petitioner's failure to carry his burden of proof as to he underlying deficiency. Habersham-Bey v. Commissioner,78 T.C. 304, 311-312 (1982). Moreover, as to the year in suit, respondent need only prove that "any part of any underpayment * * * is due to fraud." Sec. 6653(b) (1); Estate of Beck v. Commissioner,56 T.C. 297, 362 (1971). Direct proof of the taxpayer's intent is rarely available; therefore, fraud may be proved by circumstantial evidence. Spies v. United States,317 U.S. 492 (1943); Rowlee v. Commissioner, supra.The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra. *389 The burden is on respondent to prove, by clear and convincing evidence, that petitioner has an underpayment for 1973 and that some part of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b); Stone v. Commissioner, supra at 220. In the instance case, respondent's burden of proof with respect to the existence of an underpayment has been satisfied by petitioner's admission, at the time of trial, that respondent's determination of deficiency of tax for the year 1973 was correct. We must therefore consider whether any part of the underpayment, so established, for 1973 was due to fraud. For the year 1972, as previously noted, petitioner filed no income tax return, although, as he has in effect conceded, he had net income of $ 81,941.71. For the year 1973, petitioner's return, as filed, reported a net income of $ 4,779.00 and a tax liability of $ 768, although his correct net income was $ 61,690.28. The modest income reported was from interest, rents and capital gains. Nevertheless, in the years 1972 and 1973, petitioner entered into he following significant financial transactions, utilizing (except for minor amounts) cash and/or cashier's checks which *390 he purchased from various banks: a. In June 1972, petitioner purchased a house in St. Petersburg, Florida, for $ 50,000. b. In June 1972, petitioner also purchased the Bon Aire Apartments for $ 32.000. [5]
c. In 1972 and 1973, petitioner had a boat built for him. He paid $ 3,711 in 1972, and $ 3,590 in 1973. d. In October 1972, petitioner bought a new Mercedes Benz automobile, for which he paid $ 8,164.55. e. In August 1972, petitioner purchased first class airline tickets to Europe for $ 2,824. f. In 1972, petitioner paid the outstanding balance of the loan on his mother's car, in the amount of $ 2,726.14. g. In 1972, petitioner loaned one Thomas Mohn the sum of $ 1,000. h. In May 1973, petitioner bought airline tickets for $ 622.56, and in the same month bought other airline tickets for $ 982.41. i. In May 1973, petitioner paid $ 852.69 for boat rentals. j. In December 1973, petitioner bought cruise tickets for his parents for $ 419, and purchased airline tickets for $ 299.57. k. In 1973, petitioner gave his mother $ 1,700. l. In February *391 1973, petitioner purchased a diamond ring for $ 1,554.80. m. In 1973, petitioner loaned his brother-in-law $ 1,800. n. In August 1973, petitioner purchased real property in Gainesville, Florida, for $ 63,004. Of this amount, $ 5,000 was in cash or cashier's checks. o. In June 1973, petitioner purchased two cashier's checks in the amount of $ 10,000 each, naming himself as payee. p. In August 1973, petitioner purchased a certificate of deposit at the People's Bank of Gainesville, Florida, for $ 6,000. In December of that year, using in part the proceeds of that certificate of deposit, petitioner purchased two bank checks totalling $ 7,000. In the case of his purchase of the Bon Aire Apartments, mentioned above, petitioner falsely stated to respondent's special agent interviewing him that he paid only $ 7,750 and took a purchase money loan from the seller for the balance. In the case of petitioner's purchase of the Mercedes Benz automobile mentioned above, petitioner falsely stated to the interviewing agent that the car was a gift from his wife's parents to his wife. When asked about his expenses for travel in the year 1972, petitioner did not disclose his purchase *392 of European airline tickets, mentioned above. Petitioner falsely stated to respondent's interviewing agent that he had financed the purchase of the house in St. Petersburg, Florida, to the extent of $ 30,000, when in fact he had paid the entire purchase price of $ 50,000 in cash or cashier's checks. When asked about his bank accounts in the years 1971, 1972 and 1973, petitioner failed to disclose checking accounts which he maintained for all or part of the period at the Sun Coast City Bank and the Trust Company of Georgia. Although he denied having a savings account in the period, he had opened a savings account at the City Bank and Trust Company in 1972 with an initial deposit of $ 20,000, and the account remained open and active through 1973. In August 1973, petitioner purchased 47.84 acres of land in Floyd County, Georgia, for $ 31,909.28. When asked by respondent's agent about real estate acquisitions in 1971, 1972 or 1973, petitioner did not reveal this purchase. In 1978, petitioner was convicted under 26 U.S.C. sec. 7203 (1982) of failing to file a tax return, and under 26 U.S.C. sec. 7201 (1982) of criminal evasion of *393 his tax, both for the year 1972. He was acquitted of a similar charge for the year 1973 under 26 U.S.C. sec. 7201 (1982). On appeal, petitioner's conviction for 1972 was reversed and remanded for a new trial. United States v. Mock,604 F.2d 341 (5th Cir. 1979). Upon a new trial of the indictment for the year 1972, petitioner was again convicted on both counts. Once again, petitioner appealed, but this time his conviction was affirmed. United States v. Mock,640 F.2d 629 (5th Cir. 1981). Considering all the above factors which are present in the instant case, we conclude that respondent has carried his necessary burden of proof to establish fraud in the year 1973. Both for 1972 and 1973, petitioner consistently made substantial underreportings of his income. Although not conclusive, this is evidence of fraud. Holland v. United States,348 U.S. 121, 139 (1954); Estate of Mazzoni v. Commissioner,451 F.2d 197, 202 (3d Cir. 1971), affg. T.C. Memo. 1970-37; Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962), *394 affg. T.C. Memo. 1959-172; Otsuki v. Commissioner,53 T.C. 96, 108 (1969). Making false statements to respondent's examining agents, as petitioner here did in abundance, is other evidence of fraud. See United States v. Newman,468 F.2d 791, 794 (5th Cir. 1972), cert. denied 411 U.S. 905 (1973). Further, extensive dealings in cash or cash equivalents have been recognized as evidence of fraudulent activity. See Gromacki v. Commissioner,361 F.2d 727 (7th Cir. 1966), affg. T.C. Memo. 1964-292; Meredith v. Commissioner,T.C. Memo. 1985-170. Finally, we consider petitioner's conviction of fraudulent evasion of tax for 1972 to be material and relevant evidence with respect to his conduct in 1973. Although such conviction is certainly not applicable to the year 1973 under principles of res judicata or collateral estoppel, we think it may be properly considered by us where, as here, a consistent pattern of conduct running through both 1972 and 1973 has been shown. See Wilson v. United States, an unreported case (D. Minn. 1960), 5 AFTR 2d 1653, 60-2 USTC par. 9500. *395 Although none of the above elements, standing alone, would necessarily warrant a finding of fraud in this case, we think the combination of these factors, taken together, does do so. We accordingly find that petitioner's return for the year 1973 was fraudulent within the meaning of section 6653(b). Having so found, it follows that respondent's assessment of tax and addition to tax for the year 1973 is not barred by the statute of limitations. Sec. 6501(c) (1); see Estate of Temple v. Commissioner,67 T.C. 143, 164 (1976). Decisions will be entered for respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. Muriel Mock did not join in the petition herein for the year 1973. ↩
3. Rule 41(a) provides that once a responsive pleading has been filed (respondent's answer, in this case), "a party may amend his pleading only be leave of Court or by written consent of the adverse party; and leave shall be given freely when justice so requires." We have traditionally been more lenient, in the interests of justice, about enforcing our rules of pleading where pro se petitioners, not schooled in the law, are involved, but we do not think that the ends of justice are served by allowing petitioner, on the eve of trial, to raise a new issue which goes to a material element of the net worth computation which is the heart of respondent's case, and which would involve alleged facts known to petitioner all along. On these facts, we find Christensen v. Commissioner,786 F.2d 1382↩ (9th Cir. 1986), to be distinguishable. 4. The due date of petitioner's principal brief was May 26, 1987. On or about July 9, 1987, and after respondent's brief had been served on him, petitioner attempted to file a document in the nature of a brief in which, without making requested findings of fact or giving citations to appropriate authority as required by Rule 151↩, petitioner attempted to continue his argument first raised at trial concerning the correctness of respondent's net worth computation. The filing of this document was refused by the Court. 5. To the extent of $ 16,000, this purchase was financed with a purchase money loan from the Seller. ↩